# IN THE SUPREME COURT OF TEXAS

════════════
No. 10-0121
════════════

THE FINANCE COMMISSION OF TEXAS, THE CREDIT UNION COMMISSION OF
TEXAS, AND TEXAS BANKERS ASSOCIATION, PETITIONERS,

v.

VALERIE NORWOOD, ELISE SHOWS, MARYANN ROBLES-VALDEZ, BOBBY
MARTIN, PAMELA COOPER, AND CARLOS RIVAS, RESPONDENTS

════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
════════════════════════════════════════════

**Supplemental Opinion on Motion for Rehearing**

The Finance Commission and the Credit Union Commission have not moved for rehearing. Neither have respondent Homeowners. The Texas Bankers Association has moved for rehearing, in part seeking clarification of several matters. A number of amici curiae have filed briefs in support of TBA's motion.[1]

Article XVI, Section 50(a)(6)(E) of the Texas Constitution caps "fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service" a home equity loan, not including "any interest", at 3% of principal.[2] In this case, we hold that "interest" as used in this provision does not mean compensation for the use, forbearance, or detention of money, as in the

---

[1] They are AmeriFirst Financial, Inc.; Independent Bankers Association of Texas; PrimeLending, a Plains Capital Company; Texas Mortgage Bankers Association; United Services Automobile Association; and Robert Wisner.

[2] TEX. CONST. art. XVI, § 50(a)(6)(E).

usury context, but "the amount determined by multiplying the loan principal by the interest rate."[3]

This definition provides the protection to borrowers the provision is intended to afford.

We added this note in the margin: "This narrower definition of interest does not limit the amount a lender can charge for a loan; it limits only what part of the total charge can be paid in front-end fees rather than interest paid over time."[4] Focusing on the time payment is made, TBA and the amici question whether interest paid at closing falls outside the definition. For example, they explain, interest is sometimes paid at closing for part of a payment period, calculated per diem, until the regular payment date. Further, a borrower may pay discount points at closing to lower the interest rate for the term of the loan. The Homeowners respond that our opinion is clear: neither prepaid, per diem interest nor legitimate discount points are subject to the 3% cap. We agree with TBA, the amici, and the Homeowners that per diem interest is still interest, though prepaid; it is calculated by applying a rate to principal over a period of time. Legitimate discount points to lower the loan interest rate, in effect, substitute for interest. We also agree with the Homeowners that true discount points are not fees "necessary to originate, evaluate, maintain, record, insure, or service" but are an option available to the borrower and thus not subject to the 3% cap.

We also hold that Section 50(a)(6)(N), which provides that a loan may be "closed only at the office of the lender, an attorney at law, or a title company", precludes a borrower from closing the loan through an attorney-in-fact under a power of attorney not itself executed at one of the three prescribed locations. We reasoned that executing a power of attorney is "part of the closing

---

[3] *Ante* at ___.

[4] *Ante* at ___ n.104.

2

process", and that not to restrict the use of a power of attorney would impair the undisputed purpose of the provision, which is "to prohibit the coercive closing of an equity loan at the home of the owner."[5] TBA and the amici object that closing is an event, not a process, and that to consider closing as beginning with the execution of a power of attorney leads to absurd results and problems in applying deadlines prescribed by the constitutional provisions.

By "process", we did not intend something temporally protracted, though we agree that confusion is understandable. We agree with TBA and the amici that the closing is the occurrence that consummates the transaction. But a power of attorney must be part of the closing to show the attorney-in-fact's authority to act. Section 50(a)(6)(N) does not suggest that the timing of the power of attorney is important, or that it cannot be used to close a home equity loan if executed before the borrower applied for the loan. But as we have explained, we think that the provision requires a formality to the closing that prevents coercive practices. The concern is that a borrower may be persuaded to sign papers around his kitchen table collateralizing his homestead when he would have second thoughts in a lender's, lawyer's, or title company's office. To allow the borrower to sign a power of attorney at the kitchen table raises the same concern. Requiring an attorney-in-fact to sign all loan documents in an office does nothing to sober the borrower's decision, which is the purpose of the constitutional provision.

TBA and the amici argue that requiring a power of attorney, like other closing documents, to be executed "at the office of the lender, an attorney at law, or a title company" works a hardship on borrowers for whom such locations are not readily accessible, such as military persons stationed

---

[5] *Ante* at ___.

overseas, others employed in other countries, the elderly, and the infirm. For the military, the Judge Advocate General Corps provides lawyers here and abroad. We recognize that JAG lawyers may not be as accessible to military personnel as civilian lawyers are to most people owning homes in Texas, but we also recognize that soldiers and sailors in harm's way are no less susceptible to being pressured to borrow money and jeopardizing their homes than people in more secure circumstances. TBA and the amici argue that the fiduciary duty owed by an attorney-in-fact affords sufficient protection against unfair pressure and unwise decisions, but a suit for breach of fiduciary duty may be a hollow remedy and certainly cannot recover a home properly pledged as collateral. In any event, "[w]hether so stringent a restriction [as limiting the locations where a home equity loan can be closed and, we think, a power of attorney executed] is good policy is not an issue for the Commissions or this Court to consider."[6] Whether the constitutional provision's intended protection is worth the hardship or could be more fairly or effectively provided by some other method is a matter that must be left to the framers and ratifiers of the Constitution.

With these clarifications, we overrule TBA's motion for rehearing.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: January 24, 2014

---

[6] *Ante* at ___.